IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DENNIS M. GOUDIE,** | 6:15-CV-00381-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **CAROLYN W. COLVIN,**<br>**Commissioner, Social Security**<br>**Administration,** | |
| Defendant. | |

**RICHARD F. MCGINTY**
McGinty & Belcher, PC
P.O. Box 12806
Salem, OR 9730
(503) 371-9636

       Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**JANICE E. HEBERT**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**LISA GOLDOFTAS**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/A 221A
Seattle, WA 98104
(206) 615-2950

       Attorneys for Defendant

**BROWN, Judge.**

    Plaintiff Dennis M. Goudie seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

    For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

    Plaintiff filed an application for DIB on November 3, 2011, alleging a disability onset date of April 21, 2010. Tr. 126.[1] The application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on August 9, 2013. Tr. 28-70. At the hearing Plaintiff was represented by a "non-

---

[1] Citations to the official transcript of record filed by the Commissioner on November 23, 2015, are referred to as "Tr."

2 - OPINION AND ORDER

attorney representative."  Plaintiff and a vocational expert (VE) testified at the hearing.

The ALJ issued a decision on September 27, 2013, in which she found Plaintiff was not disabled before his March 31, 2014, date last insured and, therefore, is not entitled to benefits. Tr. 13-27.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on January 6, 2015, when the Appeals Council denied Plaintiff's request for review. Tr. 1-5.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born August 17, 1974, and was 38 years old at the time of the hearing.  Tr. 126.  Plaintiff completed high school.  Tr. 160.  Plaintiff has past relevant work experience as a maintenance assistant.  Tr. 23.

Plaintiff alleges disability due to migraine headaches, right-shoulder issues, and knee and back pain.  Tr. 81.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 20-22.

## STANDARDS

The initial burden of proof rests on the claimant to

3 - OPINION AND ORDER

establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

     The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

     The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving

4 - OPINION AND ORDER

ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner

5 - OPINION AND ORDER

determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the

6 - OPINION AND ORDER

Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since his April 21, 2010, alleged onset date.  Tr. 18.  The ALJ, however, noted Plaintiff applied for and received "extensive unemployment benefits" during the relevant period, which "bears negatively on the issue of [Plaintiff's] credibility."  Tr. 18.

At Step Two the ALJ found Plaintiff has the severe

7 - OPINION AND ORDER

impairments of migraines, "status post right knee surgery," and "recurrent right shoulder dislocations." Tr. 18. The ALJ found Plaintiff's impairments of Irritable Bowel Syndrome (IBS), allergic rhinitis, and "exercise-induced asthma" are nonsevere. Tr. 18.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 19. The ALJ found Plaintiff has the RFC to perform light work. The ALJ also found Plaintiff could frequently "engage in push or pull and foot control operation with his right side," balance, and reach overhead with his right arm; occasionally climb ramps or stairs and stoop, kneel, crouch, or crawl; should never climb ladders, ropes, or scaffolds; and "should avoid concentrated exposure to irritants such as fumes, odors, dust, gases, . . . poorly ventilated areas . . .[,] hazardous machinery, operational control of moving machinery, and unprotected heights." Tr. 19. The ALJ found Plaintiff "would consistently be absent from work no more than one day per month." Tr. 19

At Step Four the ALJ found Plaintiff cannot perform his past relevant work. Tr. 23.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 23.

8 - OPINION AND ORDER

Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) improperly rejected Plaintiff's testimony; (2) improperly rejected lay-witness statements; and (3) failed to include all of Plaintiff's functional limitations in his evaluation of Plaintiff's RFC.

**I. The ALJ did not err when she partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred by failing to provide clear and convincing reasons for partially rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and

9 - OPINION AND ORDER

convincing reasons for doing so.  *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified he had suffered migraine headaches since the late 1990s.  Plaintiff stated he had attended Lane Community College in 2005, but he had to drop out of school to care for his child when his child-care costs got too high (he was a divorced single parent).  Plaintiff testified he was laid off from his job "close to" his April 21, 2010, onset date and was told it was "for economical reasons."  Tr. 37.  Plaintiff testified he believed he was laid off due to his headaches because he had been reprimanded by his employer and two people less senior than him "took over [his] department when [he] left."  Tr. 37.  Plaintiff testified he had been absent and leaving work early during the period before he was laid off.  Plaintiff noted his migraines had become more frequent in the eight months before he was let go, and they were happening "anywhere from two to three times a week, up to five to six" times per week.  Tr. 39.  As a result, he was missing work three or four days a week.  Tr. 42.  Plaintiff stated the medications he takes for migraine pain "take the edge off," and the antinausea medication works

10 - OPINION AND ORDER

"really well." Tr. 40. Plaintiff, however, noted his pain medication "doesn't actually kill" the migraine pain. Tr. 40. The medication "was working really great" when it was first prescribed, but it no longer works as well.

The ALJ noted at the hearing that Plaintiff received unemployment insurance from the fourth quarter of 2010 through the fourth quarter of 2011. Even though a person must be looking for work to receive unemployment insurance, Plaintiff testified initially that he was not looking for work during that time. Tr. 45. After the ALJ questioned him about unemployment insurance, however, Plaintiff testified he had looked for work "as customer service, or maintenance, or electronic repair" while he received unemployment insurance. Tr. 47. Plaintiff also testified he believed he could have done that kind of work as long as he was not suffering from a migraine. Tr. 47. Plaintiff stated he stopped receiving unemployment insurance in the fourth quarter of 2011 because he "ran out of extensions." Tr. 47.

Plaintiff testified his doctors had tried prescribing different medications over the last 20 years in an attempt to give him some kind of relief from migraines. Plaintiff stated he had "tried probably close to 40 different combinations of medications over the last 20 years" without success.

Plaintiff testified even after his migraines subside, he suffers a "low-level headache" all day. He "can deal with the

11 - OPINION AND ORDER

headache," but the migraines are debilitating. Plaintiff testified he would consider "a success, as far as [his] headaches go" to be "eliminating them down to once to twice a week" or ideally three times per month. Tr. 55.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but Plaintiff's testimony "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." Tr. 20. The ALJ noted the record indicated only three visits by Plaintiff to the emergency room: two in 2009 and one in 2012. The ALJ also noted even though Plaintiff testified he missed three or four days of work per week due to migraines in the months before he was laid off from his job in April 2010, the record contains only one reference to Plaintiff's condition interfering with work in that period. Specifically, in March 2012 Plaintiff reported he was suffering daily headaches when his doctor diagnosed him with analgesic rebound in addition to migraines and changed his medication to oxycodone. Tr. 336. In April 2012 Plaintiff reported oxycodone stopped his migraines and his "headache remains gone x 36 hours." Tr. 333. In September 2012 Plaintiff reported to his doctor that the oxycodone was not working as effectively to reduce his pain. Tr. 429. John Roberts, M.D., treating physician, noted in October 2012, however, that the frequency of Plaintiff's

12 - OPINION AND ORDER

migraines decreased and the efficacy of oxycodone increased "following treatment of possible chronic sinusitis and increase in valproic acid dose." Tr. 428. In March 2013 Plaintiff reported having migraines every other day. Tr. 417. In April 2013 Plaintiff reported "he is satisfied with current level of pain control" and with his current medications. Tr. 416. The ALJ noted there is not any indication in the record that Plaintiff has tried 40 combinations of medication to control his migraines.

The ALJ also noted Plaintiff reported to medical staff in 2010 that he had been "laid off due to staffing cut backs - due to the declining economy." Tr. 249. Plaintiff did not indicate he believed he was, in fact, laid off because of his migraines or absences due to migraines.

The ALJ also pointed out that Plaintiff testified initially that he did not look for work after he was laid off "around" April 2010, but he "later changed his testimony to say that he did try to find a job when [the ALJ] asked him about his receipt of unemployment insurance for an extended period." Tr. 22.

On this record the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff's testimony was not entirely credible as to the limiting effects of his impairments. The Court, therefore, concludes the ALJ did not err when she rejected

Plaintiff's testimony in part.

**II.  The ALJ did not err when she partially rejected the statement of Plaintiff's wife, Kimberly Goudie.**

On December 5, 2011, Plaintiff's wife completed a third-party adult function report in which she indicated she has known Plaintiff since 2005.  Kimberly Goudie stated Plaintiff's migraines are debilitating.  "When one comes on he is either in the bathroom vomiting [or] laying in bed with no lights, cold packs over his head just trying to get the pain to stop."  Tr. 150.  Kimberly Goudie noted Plaintiff "gets the kids up," does "some chores around the home," helps to make dinner, helps the children with their homework, helps to care for the children, and helps to "manage a diabetic step-son to make sure [he] keeps in check with his A1C."  Tr. 151.  Kimberly Goudie stated Plaintiff is "so tired after having a migraine all day [that] he just can't think about taking medication."  Tr. 152.  Kimberly Goudie noted Plaintiff's hobbies include darts, pool, hunting, and watching television.  Plaintiff goes out to play darts once a week and gets together with friends once a month,  Tr. 154.  Kimberly Goudie noted Plaintiff's migraines had become worse and more frequent since the time she met him in 2005.  Tr. 157.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511

14 - OPINION AND ORDER

(9th Cir. 2001).  *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members.").  The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

The ALJ found Kimberly Goudie's statement was not "entirely credible" regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms for the same reasons that the ALJ found Plaintiff's testimony was only partially credible.

The Court concludes on this record that the ALJ did not err when he partially rejected Kimberly Goudie's statement because the ALJ provided specific reasons germane to the witness for doing so.  The Ninth Circuit held in *Molina* that when "the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  674 F.3d at 1114.  *See also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting Plaintiff's own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony'").  In *Valentine* the Court noted

15 - OPINION AND ORDER

Mrs. Valentine's testimony about her husband's fatigue was similar to her husband's subjective complaints. "Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted Plaintiff's allegations.'" *Id.* Here this Court has concluded the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony in part and, for similar reasons, concludes the ALJ gave germane reasons for rejecting Kimberly Goudie's statement.

Accordingly, the Court concludes the ALJ did not err when she partially rejected Kimberly Goudie's statement because the ALJ gave legally sufficient reasons for doing so.

**III. The ALJ did not err at Step Three.**

Plaintiff asserts the ALJ erred at Step Three when she assessed Plaintiff's RFC because she did not consider all of Plaintiff's limitations as set out by Plaintiff and Kimberly Goudie. Because the Court has found the ALJ properly rejected in part Plaintiff's testimony and Kimberly Goudie's statements, the Court concludes the ALJ did not err at Step Three when she did not include all of the limitations reported by Plaintiff and Kimberly Goudie in her assessment of Plaintiff's RFC.

Accordingly, the Court concludes the ALJ did not err at Step Three.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 5th day of July, 2016.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

17 - OPINION AND ORDER